UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR L. HAMPTON, III, <br><br> Plaintiff, <br><br> v. <br><br> JULIE SU, <br> Acting Secretary of Labor, <br><br> Defendant. | Civil Action No. 23-3338 (DLF) |

**DEFENDANT'S MOTION FOR PARTIAL DISMISSAL OF THE AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

FACTUAL ALLEGATIONS .................................................................................................... 1

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

    I.    Plaintiff Does Not Sufficiently Allege a Claim for Discrimination on the Basis of Sex..... 6

    II.    Plaintiff Failed to Exhaust His Administrative Remedies on the Basis of Color. ............... 7

    III.    Plaintiff's Hostile Work Environment Allegations Should Be Dismissed for Failure to State a Claim for Relief. ........................................................................................................... 9

    IV.    Plaintiff's Disparate Treatment Allegations Based on His 2022 Compensation Are Insufficient to State a Claim for Relief....................................................................................... 12

CONCLUSION........................................................................................................................ 14

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Allen v. Johnson*,

   795 F.3d 34 (D.C. Cir. 2015).................................................................................................. 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ..................................................................................... 5

Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008)........................................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)................................................................. 6

*Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)......................................................... 8

*Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) ............................................................................ 9

*Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006).................................................................... 8

*EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008)......................................... 10

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) .......................................................... 10

*Holbrook v. Reno*,

   196 F.3d 255 (D.C. Cir. 1999)................................................................................................ 13

*Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 263 (D.D.C. 2016) ............................................... 6

*In re James*, 444 F.3d 643, 647 (D.C. Cir. 2006) ........................................................................... 8

*Koch v. Schapiro*, 699 F. Supp. 2d 3, 12 (D.D.C. 2010) ................................................................ 8

*McRae v. Librarian of Congress*, 843 F.2d 1494, 1496 (D.C. Cir. 1988) ...................................... 9

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) ............................................... 10

*Ndondji v. Interpark Holdings, Inc.*,

   768 F. Supp. 2d 263 (D.D.C. 2011)......................................................................................... 6

*Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995).................. 13

*Nurriddin*, 818 F.3d 751,  756 (D.C. Cir. 2016) ............................................................................. 6

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).......................................... 10

*Pearsall v. Holder*, 610 F. Supp. 2d 87, 95 (D.D.C. 2009) ............................................................. 8

*Silver v. Leavitt*, Civ.A. 05-0968 JDB, 2006 WL 626928, at *9 (D.D.C. Mar. 13, 2006) ............. 8

*Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) ................................................................... 9

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 n.2 (2002) ......................................................... 6

*Townsend v. United States*, 236 F. Supp. 3d 280, 311 (D.D.C. 2017) .......................................... 10

*Wasserman v. Ahuja*, No. Civ. A. No. 21-0026 (ABJ), 2023 WL 157319, at *10 (D.D.C. Jan. 11, 2023) ........................................................................................................................................ 10

**<u>Statutes</u>**

42 U.S.C. § 2000e-16(a) ................................................................................................................ 13

42 U.S.C. § 2000e-16(c) .................................................................................................................. 9

**<u>Other Authorities</u>**

29 C.F.R. § 1614.407 ....................................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) .................................................................................................................... 5

Defendant Julie Su, named in her official capacity as the Acting Secretary of Labor, respectfully moves to dismiss in part the First Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiff is a former employee of the Department of Labor (the "Department"), who claims that he was terminated following the Department's investigations into his own misconduct, allegedly in violation of Title VII of the Civil Rights Act ("Title VII"). *See generally* First Amended Complaint, ECF No. 9 ("Am. Compl."). As discussed herein, the Court should reject Plaintiff's claims of discrimination and retaliation on the following grounds: (1) the Amended Complaint fails to support Plaintiff's claims of sex discrimination; (2) Plaintiff's color discrimination claims are not exhausted and must therefore be dismissed; (3) the Complaint does not sufficiently plead a hostile work environment claim; and (4) Plaintiff's race discrimination claim based on his 2022 compensation does not state a plausible claim of disparate treatment.

## FACTUAL ALLEGATIONS

Plaintiff is a Black, male, former employee of the Department of Labor (the "Department"). Am. Compl. ¶¶ 1, 2. Until his alleged termination from the Department, Plaintiff was serving as Regional Solicitor in the Office of the Solicitor of Labor, a senior executive service management position responsible for overseeing the Department's civil trial litigation in the District of Columbia, Delaware, Maryland, Pennsylvania, Virginia, and West Virginia. *See id.* ¶¶ 14–15; 20–30 (describing Plaintiff's career at the Department). Plaintiff's departure from the Department followed the Department's extensive investigations into complaints lodged against Plaintiff for misconduct against his fellow employees and "other alleged misconduct." *Id.* ¶¶ 75–76, 112.

Plaintiff alleges that he was terminated from his position at the Department on September 12, 2023.[1] *See id.* ¶ 114.

Stanley Keen, Plaintiff's first-line supervisor beginning in March 2021, was the Deputy Solicitor for Regional Enforcement who reported directly to the Department's Solicitor of Labor, Seema Nanda. *Id*. ¶¶ 43–45. The Amended Complaint asserts that Plaintiff repeatedly complained, at nonspecific times, to Mr. Keen and others about "harassment and discrimination against himself and other Black attorneys at [the Department]." *Id*. ¶¶ 38–42.

In August 2021, Mr. Keen received the results of the Office of Management and Budget's 2020 nationwide survey of federal employees, the Federal Employee Viewpoint Survey ("Viewpoint Survey"), in which employees anonymously respond to various questions, including whether employees feel they can "disclose a suspected violation of any law, rule[], or regulation without fear of reprisal." *Id.* ¶¶ 62–64. On this question, the Philadelphia region—the region where Plaintiff served as the senior executive service management official—had the second highest negative response. *Id.* ¶ 65. Mr. Keen was "concerned" by these responses and how they reflected on Plaintiff's leadership of the Philadelphia region. *Id.* ¶ 66. According to Plaintiff, these responses are not properly attributable to Plaintiff's conduct. *See id*. ¶¶ 66–72 (blaming, in part, the Trump Administration for employees' fear of reprisal). In discussing the Viewpoint Survey results with Plaintiff, Mr. Keen determined that Plaintiff "fail[ed] . . . to recognize the fear of retaliation or reprisal" expressed by Plaintiff's subordinates in the Viewpoint Survey. *Id.* ¶ 73.

"In or around August or September 2021"—around the same time Mr. Keen discussed with Plaintiff the Viewpoint Survey results for the Philadelphia region—Plaintiff allegedly complained

---

[1] For purposes of this Motion only, Defendant assumes the truth of Plaintiff's allegations set forth in the First Amended Complaint. Defendant reserves the right to test the cause and terms of Plaintiff's departure from the Department in discovery.

2

to Mr. Keen and Ms. Nanda about "systematic discrimination" at the Department. *Id.* ¶ 42. In October 2021, after the results of the Viewpoint Survey were circulated, one of Plaintiff's White subordinates, Judson Dean, raised complaints about Plaintiff to Mr. Keen. *Id.* ¶¶ 53–59. On October 12, 2021, Ms. Nanda also received an anonymous letter from an attorney in Plaintiff's region, which made allegations about Plaintiff similar to those made by Mr. Dean. *Id.* ¶ 60. The letter allegedly mirrored the substance and language of a prior complaint raised against Plaintiff in 2018. *Id.* Ms. Nanda provided this letter to Mr. Keen. *Id.*

Following the Viewpoint Survey results and the complaints received by Mr. Keen and Ms. Nanda, the Department investigated Plaintiff between December 2021 and March 2023, on issues including "whether [Plaintiff] created a hostile work environment, undermined [the Department's] mission, [and] created a fear of retaliation." *Id.* ¶¶ 75–76. It also investigated Plaintiff's criticisms of the Department's Honors Attorney program and "whether [Plaintiff was] the reason attorneys [were] leaving" his office. *Id.* ¶ 76. This investigation did not reveal racial bias by White attorneys in Plaintiff's region. *Id.* ¶ 82. To the contrary: this investigation concluded that as a manager, Plaintiff was "rude, unprofessional, condescending, professionally abrasive, negative, bombastic, overbearing, intimidating, hostile, disrespectful, quick to dismiss, belittling, demoralizing, gruff, aggressive, confrontational, and harassing." *Id.* ¶ 96. Furthermore, the Department also investigated Plaintiff for "other alleged misconduct," which misconduct is not identified in the Complaint.[2] *See id.* ¶ 112.

On November 4, 2022, while these investigations were pending, an attorney under Plaintiff's supervision filed a complaint with the Department alleging Plaintiff had engaged in

---

[2]   Defendant assumes for purposes of this motion only that the investigation into Plaintiff's "other alleged misconduct" also occurred during the December 2021 to March 2023 period. Defendant reserves the right to probe in discovery the timing of Defendant's investigation into Plaintiff's "other alleged misconduct."

3

reprisal. *Id*. ¶ 105. After the November 4, 2022 complaint, the Department issued a "Notice of Detail and No Contact Order" to Plaintiff that "remov[ed] him from his position as" Regional Solicitor and detailed him to "an unspecified position in [the Department's] headquarters in Washington, D.C." *Id*. ¶¶ 98–110; *see id*. ¶ 103 (alleging loss of the "prestige" of his position). Mr. Keen's stated reason for the detail assignment and no contact order was that Plaintiff had retaliated against one of his subordinates. *Id*. ¶ 104. Plaintiff disputes this subordinate attorney's characterization of events. *Id*. at ¶¶ 104–08. The Amended Complaint further alleges that—presumably in or around November 2022—the Department reduced his 2022 bonus but made no such adjustment to White regional solicitors' bonuses. *Id*. ¶ 97.

On June 21, 2023, after receiving yet more "allegations of retaliation and retribution" from another of Plaintiff's subordinate attorneys, the Department issued an updated Notice of Detail and No Contact Order to Plaintiff. *Id*. ¶ 111. The June 2023 notice further placed Plaintiff on administrative leave from June 22, 2023, to June 23, 2023. *Id*. After Plaintiff returned from administrative leave, the Department issued Plaintiff a Notice of Proposed Removal, proposing his "removal from federal service due to the results of the investigations" and "other alleged misconduct." *Id*. ¶ 112. According to the Complaint, the Notice of Proposed Removal contained "allegations against [Plaintiff] that were false and pretext for discrimination." *Id*. ¶ 113–114. The Amended Complaint asserts that the Department terminated Plaintiff's employment on September 12, 2023. *Id*. ¶ 114.

## ADMINISTRATIVE PROCEEDINGS

Plaintiff initiated EEO contact on December 21, 2022, and filed a formal complaint of discrimination on February 2, 2023. *See* Am. Compl. ¶¶ 11–12; Ex. A, Administrative Review Board Case No. 2023-0020, Final Agency Decision at 1 (Oct. 25, 2023) ("October 2023 FAD"). Plaintiff initiated another formal complaint of discrimination on September 14, 2023. *See* Am.

4

Compl. ¶¶ 11–12 (indicating that Plaintiff's September 2023 administrative complaint was pending at the time Plaintiff filed the original complaint in this Court); Ex. B, Administrative Review Board Case No. 2023-0052 (Oct. 13, 2023 Letter of Acceptance) at 3 (outlining Plaintiff's non-removal claims accepted for investigation); Ex. C, Administrative Review Board Case No. 2023-0053, Letter of Acceptance (Oct. 13, 2023 ) (outlining Plaintiff's removal-related claims accepted for investigation and explaining the legal basis for administrative bifurcation).

Plaintiff initiated the instant litigation on November 8, 2023, and with the Court's leave, amended the original complaint on March 20, 2024. *See* ECF Nos. 8 & 9; Min. Order (Jan. 17, 2024). The Amended Complaint alleges one count of discrimination based on Plaintiff's race "and/or" sex and one count of retaliation in violation of Title VII. Am. Compl. ¶¶ 119–131. Plaintiff seeks relief including reinstatement to his position as a Regional Solicitor, compensatory and consequential damages, attorney's fees, and certain injunctive relief.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or a "formulaic" recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555–56. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Instead, plaintiffs must

5

"nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, documents . . . incorporated by reference in the complaint . . . or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *see also Slate v. Pub. Defender Serv.*, 31 F. Supp. 3d 277, 280 (D.D.C. 2014) ("Courts have considered documents attached to motions to dismiss and opposition papers without converting the motion into one for summary judgment when the documents were referenced in the Complaint and were central to the plaintiff's claims.").

This standard applies equally in employment cases. *Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 263 (D.D.C. 2016). Although a plaintiff need not specifically plead the facts supporting a *prima facie* case, the Court is to rely on the factual allegations in the Complaint as pled and, along with the reasonable inferences drawn therein, reach appropriate legal conclusions based on those facts. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 n.2 (2002). Any legal conclusions couched as factual allegations should be ignored. *See Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We need not, however 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.' Nor must we accept legal conclusions couched as factual allegations.") (alterations in original; citation omitted; quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## ARGUMENT

### I. Plaintiff Does Not Sufficiently Allege a Claim for Discrimination on the Basis of Sex.

The Court should dismiss Plaintiff's claims of sex discrimination, which find no support in the Amended Complaint. "To state a claim for sex discrimination under Title VII, Plaintiff must allege that: '(1) he is a member of a protected class, (2) he suffered an adverse employment action,

6

and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class).' *Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 102 (D.D.C. 2019) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002)). Although the Amended Complaint makes passing reference to Plaintiff's sex as a basis for his Title VII claims, *see* Am. Compl. ¶¶ 8, 120, Plaintiff does not provide any factual support showing that Plaintiff suffered any adverse employment action because he is male. *See generally id.* The Amended Complaint focuses on the Department's alleged discrimination against Black employees, including Mr. Hampton, as opposed to White employees. *See, e.g., id.* ¶¶ 123–124 (alleging that Defendant "has a known history of granting preferential treatment to White employees and treating Black employees worse" and that Defendant "did not subject White employees" to similar discriminatory treatment). "There are no allegations of any individual referencing [Plaintiff's] sex or making any indirect comment referring to his sex. Nor does the complaint contain any allegations suggesting [Plaintiff] was treated differently because of his sex. As a result, [Plaintiff] does not state any claim rooted in sex discrimination." *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 11 (D.D.C. 2023) *citing Spence v. Dep't of Veterans Affs.*, No. 19-cv-1947, 2022 WL 3354726, at *6 (D.D.C. Aug. 12, 2022) (dismissing sex discrimination claim because Plaintiff did not allege any facts supporting an inference that she suffered adverse actions based on her sex).

Because the Amended Complaint entirely fails to provide any factual matter to support any inference of sex discrimination against Plaintiff, the Court should dismiss Plaintiff's Title VII claims to the extent they rely on his sex as a basis for relief.

II.     **Plaintiff Failed to Exhaust His Administrative Remedies on the Basis of Color.**

The Amended Complaint purports to seek relief based on alleged discrimination based both on his race and his color. *See* Am. Compl. ¶ 8. However, Count I of the Complaint refers to "race,"

not "color" discrimination. *See id.* ¶¶ 119–24. To the extent the Complaint can be read as asserting a separate claim of discrimination on the basis of Plaintiff's color (as opposed to his race), any such claims should be dismissed for failure to exhaust administrative remedies. Failure to exhaust administrative remedies in employment litigation is an affirmative defense, not a jurisdictional requirement. *See Koch v. Schapiro*, 699 F. Supp. 2d 3, 12 (D.D.C. 2010); *Pearsall v. Holder*, 610 F. Supp. 2d 87, 95 (D.D.C. 2009). The D.C. Circuit has repeatedly recognized that the exhaustion defense "is similar to a statute of limitations." *In re James*, 444 F.3d 643, 647 (D.C. Cir. 2006); *see also Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006) (same); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (same)). Exhaustion requirements are properly viewed as affirmative defenses, and "the defendant bears the burden of pleading and proving" the defense. *Bowden*, 106 F.3d at 437; *see also Koch*, 699 F. Supp. 2d at 12. The exhaustion requirement is not a mere legal pleasantry—rather, it is a natural outgrowth of fidelity to the principle of separation of powers, and it constitutes an indispensable prerequisite to a lawsuit in federal court." *Silver v. Leavitt*, Civ. A. No. 05-0968 (JDB), 2006 WL 626928, at *9 (D.D.C. Mar. 13, 2006). "Because timely exhaustion of administrative remedies is a prerequisite to a[n] action against the federal government, a court may not consider a discrimination claim that has not been exhausted." *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008); *see* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. The exhaustion requirement is not meant as a "procedural roadblock" but instead "is intended to give the agency the opportunity to right any wrong it may have committed." *McRae v. Libr. of Cong.*, 843 F.2d 1494, 1496 (D.C. Cir. 1988). Therefore, "[a]

8

Plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience." *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

Here, Plaintiff clearly has not exhausted a claim of discrimination on the basis of his color. *See* Ex. A (October 2023 FAD) at 1 (identifying race, sex, and reprisal as the bases of the Plaintiff's first administrative charge); Ex. B (October 13, 2023 Letter of Acceptance) at 3 (same); Ex. C (October 13, 2023 Letter of Acceptance) at 3 (same). Moreover, "[a]lthough not defined in the statute, Title VII claims based on color have been interpreted by the courts as relating to the complexion of one's skin." *Rodriguez v. Wash. Metro. Area Transit Auth.*, Civ. A. No. 19-3710 (JEB), 2021 U.S. Dist. LEXIS 158313, at *12-13 (D.D.C. Aug. 23, 2021) (citing *Howard v. D.C. Pub. Sch.,* 501 F. Supp. 2d 116, 121 n.15 (D.D.C. 2007) (collecting cases)). To the extent that courts have analyzed claims of color discrimination separate from race-based claims, they have looked to whether the "particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Id.*

In this case, because Plaintiff has not raised color discrimination as a basis for relief in the prior administrative proceedings, Plaintiff does not now get the first bite at the apple in this judicial proceeding. Plaintiff's color discrimination claim, to the extent the Amended Complaint raises such a claim, should therefore be dismissed.

### III. Plaintiff's Hostile Work Environment Allegations Should Be Dismissed for Failure to State a Claim for Relief.

To the extent Plaintiff seeks relief based on a hostile work environment theory, *see e.g.*, Am. Compl. ¶ 40 (alleging that Plaintiff complained about "harassment" of Black Department employees, including himself); *id.* ¶ 42 (alleging that Plaintiff complained about "systemic discrimination" against Black employees and that the Department allegedly failed to correct the

alleged "harassment or discrimination"); such claims should be dismissed pursuant to Rule 12(b)(6). A plaintiff alleging that he has been subjected to a hostile work environment must allege that he was subjected to discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002); *Townsend v. United States*, 236 F. Supp. 3d 280, 311 (D.D.C. 2017) (citing *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013)); *see also Wasserman v. Ahuja*, Civ. A. No. 21-0026 (ABJ), 2023 WL 157319, at *10 (D.D.C. Jan. 11, 2023). The "crucial" requirement for any such claim is that the behavior complained of be "so objectively offensive as to alter the conditions of the victim's employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Complaints about offhand comments, rude treatment, callous behavior, or routine difference of opinion and personality conflicts will not amount to a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008). Hostile work environment claims are subject to Title VII's administrative exhaustion requirement under Title VII. *See Morgan*, 536 U.S. at 115.

First, any hostile work environment claim that is beyond the scope of the Plaintiff's December 2022 EEO complaint must be dismissed, because Plaintiff has failed to administratively exhaust any such allegations. *See* Ex. B (October 13, 2023 Letter of Acceptance) at 3 (accepting for investigation Plaintiff's discrimination charge based on the June 2023 Notice of Detail and No Contact Order, and which contains no assertion of a hostile work environment); Ex. C (October 13, 2023 Letter of Acceptance) at 3 (accepting for investigation Plaintiff's discrimination charge based on Plaintiff's removal from federal service in September 2023, and which contains no assertion of a hostile work environment).

Second, even if Plaintiff's hostile work environment claims were administratively exhausted, the Amended Complaint does not state a plausible claim that Plaintiff was subjected to such severe or pervasive intimidation, ridicule, or insult on the basis of his race, color, or sex, creating an abusive work environment that altered the conditions of his employment. *Baloch*, 550 F.3d at 1201; *see also Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016) ("plaintiff asserting a claim based on a hostile work environment faces a high hurdle"). "Simply experiencing even several adverse and allegedly discriminatory work-related actions by supervisors' acting within the scope of their official duties—however objectionable that might be, and however actionable under discrete disparate treatment theories—does not necessarily mean that the employee was subjected to a hostile work environment." *Bain v. Off. of the Att'y Gen.*, 648 F. Supp. 3d 19, 60 (D.D.C. 2022) (internal quotation marks and citation omitted). "To preserve the distinction between discrete disparate treatment claims and hostile work environment claims, court have often cautioned that '[u]se of the same discrete acts, upon which [a] plaintiff bases his discrimination and retaliation claims, to support a hostile work environment claim is disfavored.'" *Id.* (quoting *Townsend v. United States*, 236 F. Supp. 3d 280, 312 (D.D.C. 2017).

Plaintiff chiefly complains about the Department's decisions, supposedly between December 2021 and September 2023, to investigate him after learning of the Viewpoint Survey results for his region, to discipline him after he was accused of engaging in retaliatory conduct against other employees during and after the Department's investigations, and subsequently, to remove him from federal service. *See* Am. Compl. ¶¶ 60–76, 97–114. While these alleged discrete events may undergird his claim that he was treated differently from other employees due to his race, they "say[] nothing to support a hostile work environment claim independent from [Plaintiff's] allegations regarding h[is] discrete claims of discrimination and retaliation." *Bain*, 648

11

F. Supp. 3d at 61. Furthermore, these actions taken against Plaintiff do not themselves rise to the level of "intimidation, ridicule, or insult" necessary to state a hostile work environment claim. *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993). Instead, the investigation into Plaintiff's alleged misconduct, and the disciplinary actions that followed, are the type of supervisory actions that are typically insufficient to state a hostile work environment claim. *See Aldrich v. Burwell*, 197 F. Supp. 3d 124, 138 (D.D.C. 2016).

Plaintiff also alludes, in a generalized manner, to claims that other Black attorneys at the Department were allegedly subjected to racial bias in a variety of ways. *See, e.g.*, Am. Compl. ¶¶ 39, 47 (alleging that "Black attorneys" were subjected to more scrutiny and criticism than White attorneys); *id.* ¶¶ 85–91 (describing a March 2023 discrimination complaint allegedly made by a Black attorney in the Philadelphia region). However, "conduct directed at others rather than at plaintiff . . . is less indicative of a hostile work environment." *Lester v. Natsios,* 290 F.Supp.2d 11, 31 (D.D.C. 2003); *see also Nuriddin v. Golden*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005) ("When racial statements are not made directly to a plaintiff, generally a hostile environment cannot be established."). The Court should therefore dismiss these allegations as insufficient to support a hostile work environment claim.

## IV. Plaintiff's Disparate Treatment Allegations Based on His 2022 Compensation Are Insufficient to State a Claim for Relief.

Plaintiff's discrimination claims based on his 2022 compensation should be dismissed because Plaintiff fails to plead facts making it plausible that the alleged decrease in Plaintiff's pay was due to his protected status. Title VII provides that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). "Under Title VII[ ] . . . the two essential elements of a discrimination claim are that: (i) the plaintiff suffered an adverse employment action (ii) because

12

of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). A plaintiff can establish an inference of discrimination by showing that: (1) he was similarly situated to an employee who was not a member of a protected class (a comparator), and (2) he was treated differently than the similarly situated employee. *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015); *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999).

Here, Plaintiff claims that his 2022 bonus and pay were reduced compared to White regional solicitors. Am. Compl. ¶ 97. This allegation is based on the conclusory assertion that Plaintiff's "performance and accomplishments . . . warranted the same bonus as the other [r]egional [s]olicitors, if not a higher bonus." *Id.* But Plaintiff does not allege that all aspects of his employment were "nearly identical" to these comparators, beyond identifying himself as a fellow regional solicitor. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (a plaintiff alleging disparate treatment must show that all "relevant aspects of her employment situation were nearly identical to those of the other employees who did not suffer similar adverse employment actions"); *see Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) ("Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses."). Plaintiff's threadbare claim of disparate treatment based on his 2022 compensation should therefore be dismissed.

## CONCLUSION

For the reasons discussed above, Defendant respectfully requests that the Court grant this Motion and enter an order consistent with the Proposed Order submitted herewith.

Dated: June 10, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:      */s/ Tabitha Bartholomew*
TABITHA BARTHOLOMEW
D.C. Bar No. 1044448
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2529
Tabitha.Bartholomew@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OSCAR L. HAMPTON, III, <br><br> Plaintiff, <br><br> v. <br><br> JULIE SU, <br> Acting Secretary of Labor, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 23-3338 (DLF) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's motion to partially dismiss the first amended complaint, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED;

ORDERED that Count I of the First Amended Complaint is DISMISSED as to Plaintiff's claims of discrimination on the basis of his sex and color;

ORDERED that Count I of the First Amended Complaint is DISMISSED as to Plaintiff's claims of race discrimination arising from his 2022 compensation; and it is further

ORDERED that Plaintiff's hostile work environment claims are DISMISSED.

SO ORDERED.


Date: _____          _____
                                                                                    United States District Judge