UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| OSCAR L. HAMPTON, III, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| JULIE SU, Acting Secretary of Labor, | ) ) ) |
| Defendant. | ) ) ) ) ) |

Civil Action No. 23-3338 (DLF)

**<u>DEFENDANT'S REPLY IN SUPPORT OF ITS</u>**
**<u>MOTION FOR PARTIAL DISMISSAL OF AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

Table of Contents ................................................................................................................................ i

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

    I.      The Amended Complaint Fails to Sufficiently Allege that Plaintiff Was Subjected to Discrimination Due to His Sex. .............................................................................. 1

    II.     Plaintiff's Color Discrimination Claim Should Be Dismissed for Failure to Exhaust Administrative Remedies. ........................................................................ 3

    III.    The Amended Complaint Fails to Sufficiently Allege Race Discrimination Based on Plaintiff's 2022 Compensation. ........................................................................ 5

CONCLUSION .............................................................................................................................. 7

**INTRODUCTION**

In response to Plaintiff's Opposition (ECF No. 14) ("Opp'n") and in further support of its request for partial dismissal of Plaintiff's claims, Defendant Department of Labor ("Department") respectfully states as follows: (1) the Amended Complaint's allegations of sex discrimination plainly fail to meet the *Twombly/Iqbal* standard; (2) Plaintiff's color discrimination claims—which he attempts to conflate with his claims of race discrimination—should be dismissed for failure to exhaust administrative remedies; and (3) the Amended Complaint does not set forth sufficient factual matter to support a claim of race discrimination based on Plaintiff's 2022 compensation. For these reasons, Defendant requests that the Court grant its Motion for Partial Dismissal of Count I.[1]

**ARGUMENT**

**I.   The Amended Complaint Fails to Sufficiently Allege that Plaintiff Was Subjected to Discrimination Due to His Sex.**

In response to Defendant's motion, Plaintiff's Opposition asserts that Plaintiff has stated a sex discrimination claim, citing two paragraphs in his 132-paragraph Amended Complaint, in which Plaintiff alleges that, on information and belief, he currently is the only Black, male supervisor in his division, Am. Comp. ¶ 39(c), and that in or around October 2021, a subordinate employee allegedly complained to Plaintiff's supervisor that Plaintiff was "physically imposing" and "had one of the deepest, loudest voices," which Plaintiff alleges invokes the stereotype that he is a "big, scary, Black man." *id.* ¶ 55(c); *see also* Opp'n at 6. These allegations, Plaintiff claims,

---

[1]   In the Motion for Partial Dismissal, Defendant argued that any hostile work environment claim in this case, to the extent such a claim was pleaded in the Amended Complaint, should be dismissed. Def.'s Mot. at 9–12. Plaintiff's Opposition confirms that the Amended Complaint does not pursue a hostile work environment claim. *See* Opp'n at 2, 10–11. As such, based on Plaintiff's representations to the Court, the Court should deny as moot the portion of Defendant's motion that seeks dismissal of the hostile work environment claim.

are sufficient to show that the Department discriminated against him due to his sex. Opp'n at 5–7. Plaintiff is wrong.

The *Twombly/Iqbal* standard requires plaintiffs to allege sufficient facts such that their claims are not "'merely consistent with' a defendant's liability" but that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Plaintiff would have the Court infer from the two allegations identified above, in which Plaintiff centers his traits as a "Black man," that the Department allegedly discriminated against him because he is male. In support of this argument, Plaintiff quoted the standard in *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). Opp'n at 3. However, the D.C. Circuit recently abrogated *Sparrow*, holding that the pleading standard in *Sparrow* is no longer binding authority. *Ho v. Garland*, -- F.4th --, 2024 WL 3260764, at *2 n.2 (D.C. Cir. July 2, 2024).

In any event, Plaintiff's allegations of sex discrimination fall far short of plausibility. First, Mr. Dean's alleged statements that Plaintiff's stature and voice conform to male sex stereotypes is simply not reflective of sex-based animus. Indeed, the allegations supporting Plaintiff's sex discrimination claim would require the Court to contort basic reason by concluding that Mr. Dean, Plaintiff's male subordinate, influenced Mr. Keen, Plaintiff's male supervisor, into actions alleged to be discriminatory on the basis of Plaintiff's sex—also male.

Plaintiff's allegation that he was the only Black male in management similarly does not evidence any sex-based animus, given that it is contradicted by Plaintiff's other allegations admitting the existence of several other male managers in his division and chain of command. *See* Am. Compl. ¶¶ 5–6 (describing his own supervisor, Stanley Keen, as male); *id.* ¶¶ 95(b), 95(f) (referencing two unnamed white male managers in his division). As Plaintiff is indisputably one

of multiple male managers, this allegation of sex discrimination is revealed to be, in reality, an allegation of race discrimination. These two factual allegations are insufficient to plead a case of sex-based discrimination.

Second, the Amended Complaint provides no support for the claim that Plaintiff's sex was the "motivating factor" for any discrete adverse action. Considering the entirety of the Amended Complaint's allegations, Plaintiff's claims for relief plainly rely on alleged racial animus toward Black attorneys, not on any sex-based animus. *See, e.g.*, Am. Compl. ¶¶ 39(c), 46–52, 55, 59, 78–81; *Ho*, 2024 WL 3260764, at *2 (D.C. Circuit admonishes that the complaint should be considered as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible) (cleaned up). Nowhere does Plaintiff allege he was treated differently from other employees on the basis of his sex. *See generally* Compl.; *see also McNair v. District of Columbia*, 213 F. Supp. 3d 81, 87–88 (D.D.C. 2016) (dismissing gender discrimination claim due to complaint's failure to plausibly allege that the claimed adverse actions were motivated by plaintiff's gender). The Court should not countenance any attempt by Plaintiff—by way of his Opposition—to rewrite his claims to include a claim for sex discrimination that is plainly unsupported by the allegations of the Amended Complaint. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014).

The Court should therefore dismiss Plaintiff's sex discrimination claim pursuant to Rule 12(b)(6).

## II. **Plaintiff's Color Discrimination Claim Should Be Dismissed for Failure to Exhaust Administrative Remedies.**

Defendant's opening brief argued that Plaintiff failed to exhaust administrative remedies for discrimination based on his color. Plaintiff's Opposition in effect asks the Court to excuse this

failure, asserting that Plaintiff's race and color (African American and Black) are interchangeable for purposes of the Amended Complaint. *See* Opp'n at 7–10.

Defendant urges the Court to reject this invitation. While it is true Title VII does not define the term "color," courts have recognized that "[c]olor discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002); *see also Rodriguez v. WMATA*, Civ. A. No. 19-3710 (JEB), 2021 WL 3722729, at *5 (D.D.C. Aug. 23, 2021). Plaintiff makes no such allegation in the Amended Complaint.

To salvage his claim, Plaintiff cites *Gordon v. Off. of Architect of Capitol*, 750 F. Supp. 2d 82, 88 n.3 (D.D.C. 2010), for the proposition that plaintiff's race and color claims are "identical" for purposes of its jurisdictional analysis under the Congressional Accountability Act. Opp'n at 9. Gordon is not persuasive as that statement was tucked in a footnote without analysis. Plaintiff's reliance on *Daughtry v. kmG Hauling, Inc.*, Civ. A. No. 20-3361, 2021 WL 4078686, at *5 (D.D.C. Sept. 8, 2021) (TJK), is also unhelpful to Plaintiff's cause. While the court in *Daughtry* determined that the plaintiff had exhausted both her race and color discrimination claim, the court so held based on its finding that "in the body of her charge," the plaintiff had used both the term "African American" and "Black" in setting forth her claim, thus incorporating both race and color discrimination at the administrative complaint phase. *Id.* at *5.

While "EEOC complaints are to be liberally construed, because they are often drafted 'by persons unschooled in technical pleading," *Montgomery v. Omnisec Int'l Sec. Servs.*, Inc., 961 F. Supp. 2d 178, 181 (D.D.C. 2013), those are not the circumstances present here, and liberal construction "cannot be used to permit a litigant 'to bypass the Title VII administrative process.'"

*Id.* (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). "The EEOC charge form makes [identifying the complainant's claimed basis of discrimination] extremely easy, with its boxes that an employee can merely check. If an employee is uncertain of the cause of discrimination that he believes has occurred, he need only describe it in the text of the charge form." *Carter v. Wash. Post*, Civ. A. No. 05-1712 (RMC), 2006 WL 1371677, at *4 (D.D.C. May 15, 2006). Here, the body of Plaintiff's EEO complaint makes reference to the terms "Black" and "Caucasian" in connection with his "race" discrimination claim, which was the sole identified basis for his claim (other than reprisal), and does not make any separate reference to color as is explained in the glossary of terms that accompanies the EEO complaint form. *See* Exhibit ("Ex.") D at 6 (defining the term "Race" including "Black or African American," and in a separate, subsequent paragraph, the term "Color," which is defined as "[o]ne's skin color or complexion. For example: light-skinned or light complexion, dark-skinned or dark complexion"). Thus, even if the Court is persuaded by the analysis set forth in *Gordon* or *Daughtry*, under these circumstances, where Plaintiff is a sophisticated litigator and was represented by counsel during the EEO proceedings, it is reasonable to conclude that Plaintiff did not include a claim for color discrimination in his complaint at the administrative level and has therefore failed to exhaust such a claim before seeking relief in this Court.

For these reasons, the Court should dismiss Plaintiff's claims of color discrimination pursuant to Rule 12(b)(6).

### III. The Amended Complaint Fails to Sufficiently Allege Race Discrimination Based on Plaintiff's 2022 Compensation.

Plaintiff contends he has sufficiently alleged he performed as well as or better than all of the other regional solicitors (who are White) and, therefore, the alleged reduction of his 2022 bonus and pay compared to those employees was motivated by racial animus. *See* Opp'n at 12–14; Am.

Compl. ¶ 97. These allegations are insufficient to state a claim for disparate treatment and should therefore be dismissed.

The cases relied on by Plaintiff demonstrate the sheer insufficiency of Plaintiff's compensation-based allegation of race discrimination here. *See generally* Opp'n at 13–14. In *Brown v. Sissoms*, the plaintiff provided specific allegations about a male selectee's qualifications to establish an inference of racial discrimination when he was selected for a tenured position at the defendant university instead of the plaintiff. 774 F.3d 1016, 1023 (D.C. Cir. 2014). In *Dickinson v. District of Columbia*, a non-selection and termination case, the plaintiff alleged sufficient facts to demonstrate that he was better qualified than the individuals who were selected to fill the positions at issue. 315 F. Supp. 3d 446, 454 (D.D.C. 2018) (describing plaintiff's allegations regarding the qualifications of the individuals eventually hired by the municipality). In *Owens v. Thompson*, the plaintiff identified "at least two better-paid male colleagues who had the same job title as her, were hired around the same time, and had the same or less relevant education and experience than her," who she alleged were paid more than she was paid in starting salary and raises. Civ. A. No. 23-662 (TSC), 2024 WL 1328461, at *3 (D.D.C. Mar. 28, 2024); *see id.* at *1 (quoting plaintiff's specific allegations of the male comparators' qualifications and starting pay). Based on these detailed allegations, the courts in these cases found that the plaintiffs had sufficiently pleaded a claim of disparate treatment.

In stark contrast to those cases, Plaintiff's compensation-based claim amounts only to the bald assertion that he was entitled to the same or greater pay for 2022 compared to the other regional solicitors based on the outcome of one case Plaintiff managed, and that he received a lower bonus and pay increase because of his race. *See* Am. Compl. ¶ 97. Unlike the plaintiff in *Owens* for example, Plaintiff does not allege any facts about the manner in which regional

solicitors' bonuses or pay increases are determined to support his claim that he was entitled to the same or greater pay as these counterparts. Plaintiff does not allege that any specific performance rating, accomplishment, or career milestone entitled regional solicitors to a bonus or pay increase in any given year, let alone 2022. Also missing from the Amended Complaint is any allegation that Plaintiff and the other regional solicitors engaged in similar conduct relevant to the awarding of bonuses during the 2022 performance period. Plaintiff does not provide a single metric, percentage, or other estimated measure of the alleged reduction in his pay compared to the other regional solicitors. Plaintiff's allegations surrounding his 2022 compensation are therefore the type of threadbare assertions that cannot support a claim for discrimination. The Court should therefore dismiss Plaintiff's race discrimination claim to the extent it relies on his 2022 compensation.

## CONCLUSION

For these reasons, and the reasons stated in Defendant's opening brief, the Court should grant Defendant's motion to dismiss Plaintiff's claims for sex and color discrimination, and Plaintiff's claims for race discrimination based on his 2022 compensation as set forth in Count I. Based on Plaintiff's representations to the Court in his Opposition, the Court should also deny as moot Defendant's motion to dismiss any hostile work environment claims.

Dated: July 12, 2024                Respectfully submitted,

                                                         MATTHEW M. GRAVES, D.C. Bar #481052
                                                         United States Attorney

                                                         BRIAN P. HUDAK
                                                        Chief, Civil Division

                                                        By:      */s/ Tabitha Bartholomew*
                                                        TABITHA BARTHOLOMEW
                                                        D.C. BAR No. 1044448
                                                        Assistant United States Attorney
                                                        601 D Street, NW

Washington, DC 20530
202-252-2529

*Attorneys for the United States of America*

- 8 -

# EXHIBIT D

**JGL JOSEPH GREENWALD & LAAKE, PA**

**Michal Shinnar**
*Attorney at Law*

**Office in Greenbelt, MD**
Direct Dial: (240) 553-1802
Direct Fax: (240) 553-1750
Email: mshinnar@jgllaw.com

February 2, 2023

Director, Civil Rights Center
U.S. Department of Labor
200 Constitution Avenue, NW, Room N4123
Washington, DC 20210
CRC-FORMAL-COMPLAINTS@DOL.GOV
*Sent via email*

    **Re:**    *Oscar L. Hampton III v. Dept. of Labor*
             **Formal Complaint of Discrimination**

To the Director, DOL Civil Rights Center,

    I am submitting the attached Formal Complaint of Discrimination on behalf of my Client, Oscar L. Hampton, III, Esq., the U.S. Dep't of Labor's ("DOL" or the "Agency") long-time Regional Solicitor for DOL Region III (Philadelphia). Please direct all correspondence regarding this matter to me.

    Please contact me with any questions.

                                Very truly yours,

                                JOSEPH, GREENWALD & LAAKE, P.A.

                          By: _____
                                Michal Shinnar
                                mshinnar@jgllaw.com

6404 Ivy Lane | Suite 400 | Greenbelt, MD 20770
Phone: 301.220.2200 | Fax: 240.553.1734 | www.jgllaw.com

00001

**Montgomery County Office**
111 Rockville Pike | Suite 975 | Rockville, MD 20850

Formal Complaint
Page 1 of 7

**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
Complaint of Discrimination

*Note:* Complete, sign, and send this form in accordance with instructions from your EEO Counselor to Director, Civil Rights Center
  *See back for additional information or for help in completing this form*

| | |
|---|---|
| **1. Name:** Oscar L. Hampton, III | **2. Agency:** U.S. Dept. of Labor, Office of the Solicitor<br><br>**Position Title/Grade:** ~~Regional Solicitor for DOL Region III~~ (Philadelphia).<br>SES Position. |
| **3a. Home Address:**<br>8405 Henry Way<br>Glenside, PA 19038 | **3b. Office Address (if DOL employee):**<br><br>1835 Market Street, Mailstop SOL/22<br>Philadelphia, PA 19103-2968 |
| **4a. Telephone (including area code, extension):**<br><br>  Home/Cell: (816) 419-5485<br><br>  Office: | **4b. Email Address (CRC may contact you via email):**<br><br>  Home: olhamptoniii@gmail.com<br><br>  Office: |

**5. Bases** (check as appropriate and specify where a blank is provided):

| | | |
|---|---|---|
| x  Race: Black | Religion: | x  Sex (including pregnancy): Male |
| Color: | Age<br>(Date of Birth): | Sex/Gender Identity/Transgender Status: |
| National Origin: | Parental<br>Status: | Sex/Sex-Based Stereotyping/Sexual Orientation: |
| Disability: | Genetic Information/<br> Services: | x  Reprisal (Please specify the prior EEO activity and date): Ongoing complaints to senior management, including Seema Nanda & Stan Keen, including between Aug. 2021-Sept. 2022. (see attached second page) |

**6. Specify the action(s) that gave rise to this complaint** *(use the second page if needed)*:


See attached second page.


00002

Formal Complaint
Page 2 of 7

**7. Please specify remedy(ies) you believe will resolve your complaint:**

Fully restore Mr. Hampton to his position as the Regional Solicitor for DOL Region III, including by rescinding the Notice of Detail and No Contact Order and the Notice of Proposed Removal; DOL remove Stanley Keen from Mr. Hampton's supervisory chain and assign him to a mutually agreeable new supervisory chain; DOL, via Stanley Keen and Seema Nanda, issue a mutually agreed upon apology for the Detail and No Contact Order; Clean Mr. Hampton's personnel file of all misinformation, negative remarks and discipline; Change Mr. Hampton's 2022 performance appraisal to "outstanding" (the appraisal he should have received and has routinely gotten); Pay Mr. Hampton for all lost income, including his lost bonus for 2022; his raise for 2023; and any other lost income; Restore all leave Mr. Hampton lost as a result of DOL's discriminatory actions; Pay Mr. Hampton for medical expenses incurred; Award Mr. Hampton compensatory damages; Pay Mr. Hampton's attorneys' fees and costs; Take appropriate actions to ensure that this pattern and practice of discrimination against Mr. Hampton and Black attorneys at DOL ends; Any other relief allowed under the law.

| 8. Date Notice of Right to File a Complaint of Discrimination was issued:<br>Jan. 19, 2023 | 9. EEO Counselor's Name:<br>Michael Delaney | 10. EEO Counselor's Telephone Number and Email Address:<br>(202) 693-1279;<br>delaney.michael@dol.gov |
|---|---|---|
| 11. Have you filed a complaint on this same matter with:<br>No. | Administrative grievance system?<br>A union (specify name and date _____)?<br>Merit Systems Protection Board (MSPB)? | If yes, date(s) of other filing(s): |
| 12a. Representative's Name<br>Michal Shinnar, Esq.<br>Senior Counsel<br>Joseph, Greenwald and Laake, PA | 12b. Representative's Address:<br>6404 Ivy Lane, Suite 400, Greenbelt, Maryland 20770 | 12c. Representative's Telephone and Email Address:<br>mshinnar@jgllaw.com<br>301.220.2200 |

**Date**                                    **Signature**

*CRC Use Only*   Date Received by CRC:        Issue:                    Case Number:

---

CRC–1, Revised 03/15

# Formal
**Complaint of Discrimination**



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Formal
**Complaint of Discrimination**

**When can you file a formal complaint?**

When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have 15 calendar days from receiving that notice to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor. Please note that the Secretary's office will forward the formal complaint to CRC, which may delay processing of your complaint.

**What happens next?**

Only allegations presented for EEO counseling will be considered for investigation at the formal stage. **However, if you wish to amend your formal complaint** during processing with allegations "like or related to" issues you raised in your informal complaint, **you must** request an amendment by letter to the Director, Civil Rights Center.

**6. Continued.** Use this space to continue #6 from the face of this form.

00003                                                                              Formal Complaint
                                                                                   Page 3 of 7

Mr. Hampton's claims are as follows:

Whether the Agency subjected Mr. Hampton to discrimination based on his race (Black), his sex (male) and for his repeated protected complaints of discrimination regarding himself and discrimination against other Black employees at DOL, when:

1. On November 10, 2022, DOL issued Mr. Hampton a "Notice of Detail and No Contact Order" removing him from his duties as Regional Solicitor and detailing him to "to a position of unclassified duties with the SOL Front Office, effective immediately."

2. On December 1, 2022, DOL gave Mr. Hampton a negative performance review. The basis for the negative review included Mr. Hampton's protected complaints of discrimination and the disparate treatment he faces as a Black man in his position.

3. In December 2022 DOL denied Mr. Hampton his full bonus and raise;

4. DOL has proposed Mr. Hampton's removal from federal service (no final decision has been issued);

5. DOL has subjected Mr. Hampton to an ongoing pattern of discriminatory disparate treatment, including: [1]

    a. Stereotyped criticism, increased scrutiny, and repeatedly holding Mr. Hampton to different standards than Caucasian attorneys: while DOL awards Caucasian attorneys for showing skills like trial advocacy, leadership, and obtaining victories for DOL, DOL penalizes Mr. Hampton and Black attorneys for the same traits, labeling them with negative stereotypes such as aggressive, confrontational, angry, and overbearing.

    b. Stereotyped criticism, increased scrutiny, and repeatedly holding Mr. Hampton to different standards than Caucasian managers when he acts in his managerial capacity, including assessing performance, making decisions about cases, work assignments, discipline and promotions;

    c. Biased, discriminatory assumptions that when there are workplace disputes, Caucasian employees are to believed, and the Black employees, including Mr. Hampton, are lacking credibility, at fault, and/or have engaged in misconduct;

    d. Subjecting Mr. Hampton to administrative investigations (conducted by DOL's OASAM/OHR/DELMR) regarding discriminatory allegations made by Caucasian staff, including in November 2022 and January 2023.

Some of Mr. Hampton's recent protected activity includes the following:

1. August 2021, complaints to Seema Nanda about the lack of diversity at DOL, and requests to Ms. Nanda and Stanley Keen for data about the same;

2. September 2021 complaints to Stanley Keen and Seema Nanda about discrimination against Black attorneys and/or managers at DOL;

3. March 2022, complaints to Seema Nanda and Stanley Keen that DOL was refusing to assign honors attorneys to work in his region because Mr. Hampton is Black;

4. May 2022 Complaint to Stanley Keen about discrimination against a Black attorney, L. Williams;

5. June 6, 2022: Complaint to Stanley Keen about racism in the Honors Program (overseen by Keen);

6. Late August/early September 2022: Public complaint to Seema Nanda and Stanley Keen about diversity on a Microsoft Teams call.

---

[1] The following claims are examples of the disparate treatment; they do not constitute an exhaustive list of every example of disparate treatment to which the Agency subjected Complainant.

00004

Formal Complaint
Page 4 of 7

Mr. Hampton's protected activity have included:
1. Complaints that DOL fails to hire Black attorneys, fails to promote them to managerial positions, and also fails to support them in their employment, ultimately resulting in ending or damaging their careers with DOL.
2. Complaints about DOL's practice of subjecting Black attorneys to investigations based on specious allegations of misconduct.
3. Complaints that DOL's Honors Attorney Program disproportionately recruits Caucasian attorneys, and provides them with professional advancement opportunities not available to Black attorneys in DOL.
4. Complaints that DOL repeatedly holds himself and other Black attorneys to different standards that Caucasian attorneys: while DOL awards Caucasian attorneys for showing skills like trial advocacy, leadership, and obtaining victories for DOL, DOL penalizes Black attorneys for the same traits, labeling them with negative stereotypes such as aggressive, confrontational, angry, and overbearing.

**CRC–1, Revised 03/15**

**Formal**
Complaint of Discrimination



**U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

**Formal**
Complaint of Discrimination

**Definitions** Individuals may file EEO complaints if they believe they have been subjected to discrimination because of their affiliation with the groups and/or statuses listed below.

00005

Formal Complaint
Page 5 of 7

| | |
|---|---|
| **Race** | Equal employment opportunity cannot be denied any person because of his/her racial group or perceived racial group, his/her race-linked characteristics (e.g., hair texture, color, facial features) or because of his/her marriage to or association with someone of a particular race or color. Title VII of the Civil Rights Act of 1964 (Title VII) also prohibits discrimination in compensation and other terms, conditions, and privileges of employment based on stereotypes and assumptions about abilities, traits or the performance of individuals of certain racial groups. <u>Racial groups, for example:</u><br>• American Indian or Alaska Native: A person having origins in any of the original peoples of North, South, or Central America and who maintains tribal affiliation or community attachment.<br>• Asian:  A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian subcontinent. For example: Cambodia; China; India; Japan; Korea; Malaysia; Pakistan; the Philippine Islands; Thailand; and Vietnam.<br>• Black or African American:  A person having origins in any of the black racial groups of Africa.<br>• Native Hawaiian or other Pacific Islander:  A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.<br>• White:  A person having origins in any of the original peoples of Europe, the Middle East or North Africa. |
| **Color** | One's skin color or complexion. For example: light-skinned or light-complexion; dark-skinned or dark-complexion. |
| **National Origin** | An individual's (or his or her ancestor's) place of origin; or having the physical, cultural, or linguistic characteristics of a national origin group. For example: Egyptian; Iroquois Nation; and Hispanic.  (Hispanic, Latino, or Spanish origin refers to persons of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race.)  National origin discrimination means treating someone less favorably because he or she comes from a particular place, because of his or her ethnicity or accent or because it is believed that he or she has a particular ethnic background.  National origin discrimination also means treating someone less favorably at work because of marriage or other association with someone of a particular nationality.  Examples of violations covered under Title VII include employment decisions, harassment and actions regarding language, (especially accent discrimination) and English-only rules. |
| **Religion** | An individual's sincerely held religious practices and/or beliefs.  Examples: Baptist; Catholic; Hindu; Jewish; and Muslim.  Employers may not treat employees or applicants more or less favorably because of their religious beliefs or practices.  Employers must reasonably accommodate employees' sincerely held religious practices unless doing so would impose an undue hardship on the employer. |
| **Age** | The Age Discrimination in Employment Act (ADEA) protects both job applicants and employees 40 years of age or older from employment discrimination based on age. |
| **Disability** | An individual with a disability is a person who has a physical or mental impairment that substantially limits one or more major life activities, has a record of such impairment or is regarded as having such impairment. An employer is required to make a reasonable accommodation to the known disability of a qualified applicant or employee if it would not impose "undue hardship" on operation of the employer's business. |
| **Sex** | Title VII prohibits employment decisions on the basis of sex, which includes stereotypes and assumptions about abilities, traits, or the performance of individuals. Title VII also prohibits sexual harassment, which includes practices ranging from direct requests for sexual favors to workplace conditions that create a hostile environment for persons of either gender, including same sex harassment. Title VII also prohibits discrimination on the basis of pregnancy, childbirth and related medical conditions. The Equal Pay Act of 1963 requires that men and women be given equal pay for equal work in the same establishment. The jobs need not be identical, but they must be substantially equal. Discrimination against an individual because that person is transgender is discrimination because of sex in violation of Title VII. This is also known as gender identity discrimination. Additionally, lesbian, gay, and bisexual individuals may bring sex discrimination claims. These may include, for example, allegations of sexual harassment or other kinds of sex discrimination, such as adverse actions taken because of the person's non-conformance with sex-stereotypes. |
| **Sexual Orientation** | A person's enduring emotional, romantic or sexual attraction to another person without regard to the sex of that person, i.e. homosexuality, bisexuality or heterosexuality. |
| **Reprisal** | Civil rights laws prohibit reprisal for filing an EEO complaint, participating in the EEO process, opposing a discriminatory employment practice or requesting a reasonable accommodation based on religion or disability. |
| **Genetic Information** | Information about an individual's genetic tests; information about the genetic tests of an individual's family members; or information about occurrence of a disease, medical condition or disorder in family members of the individual.  Information about an individual's current health status (including information about sex, age, physical exams, and chemical, blood, or urine analyses) is not protected genetic information unless it contains information about an individual's genetic tests. |
| **Genetic Services** | Services, including genetic testing and counseling, provided to obtain, assess or interpret genetic information for diagnostic or therapeutic purposes, or for genetic education. |
| **Parental Status** | Status as a parent refers to the status of an individual who, with respect to an individual who is under the age of 18 or who is 18 or older but is incapable of self-care because of a physical or mental disability, is a: biological parent; adoptive parent; foster parent; stepparent; custodian of a legal ward; *in loco parentis* over such an individual; or actively seeking legal custody or adoption of such an individual. |

CRC–1, Revised 03/15

**Formal**
**Complaint of Discrimination**